**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PURE VIRGINIA USA, LLC,

        Plaintiff,

v.                                  Case No. 16-10151

OHSERASE MANUFACTURING, LLC.,

        Defendant.

                                  /

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION"**

This is a breach of contract case in which Plaintiff alleges that cigarettes manufactured by Defendant for Plaintiff's intended sale in Iraq were defective. Pending before the court is a "Motion to Dismiss for Lack of Personal Jurisdiction," filed by Defendant Ohserase Manufacturing, LLC. (Dkt. # 6.) The matter has been fully briefed and a hearing was held on July 27, 2016. For the reasons stated below, the court will grant the Motion.

**I. BACKGROUND**

Plaintiff Pure Virginia USA, LLC is a Michigan entity established for the purpose of exporting American-manufactured cigarettes to Iraq. (Dkt. # 7, Pg. ID 66.) Defendant Ohserase Manufacturing, LLC is a New York entity located on the Saint Regis Mohawk Indian Reservation, Akwesasne Mohawk Territory, Hogansburg, New York. (Dkt. # 6, Pg. ID 24.) Defendant is a tobacco manufacturing company, active in numerous states across the United States, not including Michigan. (*Id.*) In November 2013, Plaintiff's president, Bassam Basido, and Defendant's Managing Director, Justin Tarbell, engaged

in negotiations via email and telephone aimed toward an agreement for Defendant to manufacture tobacco products for Plaintiff to purchase and later export to Iraq. (Dkt.   # 7, Pg. ID 67.)

Later that month, the parties came to an agreement for Defendant to manufacture cigarettes for Plaintiff in accordance with specifications to be later developed and determined by Plaintiff. (*Id.* at Pg. ID 67-68.) A written (but unexecuted) version of the agreement states that the "validity, construction and performance of this Agreement shall be governed and interpreted in accordance with the laws of the State of New York." (Dkt. # 7-3, Pg. ID 98 ¶ 3.) Before shipping the final product for subsequent resale in Iraq, Defendant sent twenty cartons of cigarettes to Plaintiff in Michigan for sampling purposes only. (Dkt. # 7-2, Pg. ID 92 ¶ 12.) Plaintiff then sent some of that sample to Iraq in order to garner consumer feedback. (Dkt. # 7, Pg. ID 71.) Consumers disliked the sample product, and responded negatively. (Id.)

Communications between the parties regarding changes that needed to be made to the tobacco product continued through July 2014. (Dkt. # 7-14, Pg. ID 128.) Sometime after such correspondence, Defendant sent a "substantial shipment" of the tobacco product to Plaintiff's distributor in Iraq for resale purposes. (Dkt. # 7, Pg. ID 71.) All of the tobacco products contained in that shipment were either pulled from the shelves of stores or rejected by the Iraqi Government outright. (*Id.* at Pg. ID 72.) Plaintiff alleges that Defendant breached the contract by failing to manufacture the cigarettes in accordance with the terms of the parties' agreement. (*Id.* at Pg. ID 65.)

Accordingly, Plaintiff filed this Complaint against Defendant, for breach of contract, unjust enrichment and quantum meruit. (Dkt. # 1.) Defendant then filed the instant Motion seeking dismissal for lack of personal jurisdiction. (Dkt. # 6.)

## II.  STANDARD

If a district court lacks jurisdiction over the defendant, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2).  "The burden of establishing jurisdiction is on the plaintiff."  *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993). "A district court, in its discretion 'may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'" *Carrier Corp. v. Outokumpu Oyj*,  673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  However, when the court has elected to proceed without discovery or a hearing, the evidence is considered in the light most favorable to the plaintiff: the plaintiff must only make a *prima facie* case, and the court does not consider the "controverting assertions of the party seeking dismissal."  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). In addition, the plaintiff must follow the general guidelines for pleading standards—the plaintiff must allege specific facts to show the standard has been met for personal jurisdiction. *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (stating that complaints must follow federal pleading standards for personal jurisdiction issues as well).

A federal court's exercise of jurisdiction over litigants in a diversity of citizenship case must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp.*

3

*v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). For Michigan, the courts have determined Michigan's long-arm statute gives the "maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir. 1981). Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fairplay and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

### III. DISCUSSION

Defendant argues that this court lacks sufficient contacts to confer personal jurisdiction over it. The court agrees. Personal jurisdiction issues in Michigan courts are governed by the state's long-arm statute, Mich. Comp. Laws §§ 600.715 (corporations) & 600.705 (individuals). For purposes of this motion, Defendant is subject to limited personal jurisdiction only if it transacted any business within the state and Plaintiff's cause of action arose out of that transaction.

Further, Michigan courts and courts within this circuit have consistently held that Michigan's long-arm statute extends as far as the Fourteenth Amendment's Due Process Clause allows. *Neogen Corp.*, 282 F.3d at 888 ("The 'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established

4

by 'the slightest act of business in Michigan.'") (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1998); *see also Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) ("The standard for deciding whether a party has transacted any business under § 600.715(1) is extraordinarily easy to meet. '[T]he only real limitation placed on this [long arm] statute is the due process clause.'") (citation omitted). Accordingly, if jurisdiction over Defendant in this court is proper under the Fourteenth Amendment, it is also proper under Michigan's long-arm statute.

Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In order to find limited personal jurisdiction, a plaintiff needs to demonstrate three key factors: (1) the defendant must "purposefully avail himself of the privilege of acting in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant . . . must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  All three factors must be present to allow for a finding of limited personal jurisdiction. The court will analyze each of these factors in turn.

### 1. Purposeful Availment

The Sixth Circuit has found that "[p]urposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Beydoun v.*

5

*Wataniya Rests. Holding, Q.S.C.,* 786 F.3d 499, 505-06 (6th Cir. 2014). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or the actions of a third-party. *Burger King,* 471 U.S. at 475. "Parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473. Nevertheless, "the Court does not have to find that [a defendant] was physically present in Michigan in order to fulfill the purposeful availment requirement." *ACS Consultant Co., Inc. v. Williams,* No. 06-11301, 2007 WL 674608, at *7 (E.D. Mich. March 5, 2007) (Zatkoff, J.) (citing *Burger King,* 471 U.S. at 476; *Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996) (finding defendant had purposefully availed himself of forum state even though he had never physically been there)). While "*isolated phone calls*" or other electronic communications alone are insufficient to satisfy this prong, *Alex Pallet Sys., LLC v. Bifworld, Inc.,* No. 13-13567, 2013 WL 6885175, at *3 (E.D. Mich. Dec. 31, 2013) (Cleland, J.) (emphasis added); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997), *regular* business contact with individuals in the forum state "through mail or telephone . . . can constitute contact sufficient to confer personal jurisdiction," *Superior Consulting Co., Inc. v. Walling,* 851 F. Supp. 839, 844 n.6 (E.D. Mich. 1994) (Cohn, J.). Although not a dispositive factor, in a breach of contract case, a choice of law provision in the agreement "should not be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's law' for jurisdictional purposes." *Id.* at 844 (citing *Burger King*, 471 U.S. at 482).

6

In *Calphalon Corp. v. Rowlette*, 228 F.3d 722 (6th Cir. 2000), the Sixth Circuit rejected an argument for personal jurisdiction over an out-of-state defendant that agreed to represent an Ohio manufacturing company in Minnesota, Iowa, North Dakota, South Dakota and Nebraska. The Circuit determined that the defendant's two visits to Ohio, in addition to phone, mail, and fax communications with the plaintiff, were insufficient for a finding of purposeful availment because such contacts were not the result of a defendant's attempts to enter or exploit the market of the forum state. *Id.* at 723. Although the parties established a seventeen-month contractual relationship, "the mere existence of a contract between [Defendant] and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over [Defendant]." *Id.* at 722. The court reasoned that "[Defendant] would have served as [Plaintiff's] representative in the designated states, regardless of [Plaintiff's] base of operation. Thus, [Defendant's] contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.* at 723.

Likewise, in *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293 (6th Cir. 1989), the Circuit found that an Indiana defendant who agreed to sell a parcel of land in Florida to a Michigan plaintiff did not have sufficient contacts with the Michigan forum to purposely avail itself of doing business in Michigan, despite exchanging phone calls and draft agreements through the mail with the Michigan plaintiff. The court determined that the parties' few contacts and short-term agreement did not involve a continuing relationship with the forum state, and therefore, failed to support a finding of purposeful

availment. The court explained that the defendant in that case did not contract with the plaintiff "for the purpose of creating any 'continuing relationship' in Michigan, but for the purpose of making a cash purchase of a choice piece of real estate in Florida." *Id.* at 1300.

The court in *LAK* emphasized, in addition to the parties' lack of contacts and short-term agreement, the agreement's choice-of-law provision favoring Florida: "[H]aving elected to invoke the benefits of Florida law for deciding disputes under the contract, there is obviously much to be said in favor of letting such disputes be resolved in a Florida court." *Id.* at 1295.

Here, Defendant's contacts are even weaker than those in *Calphalon*. First, although the parties communicated via telephone and email, no Defendant employee ever traveled to Michigan in connection with the agreement between Defendant and Plaintiff. (Dkt. # 6-2. at Pg. ID 47 ¶ 14.) Second, the present parties' agreement lasted for only ten months—months shorter than the seventeen-month agreement involved in *Calphalon*. (Dkt. # 7, Pg. ID 69-71.) Third, just as the defendant in *Calphalon* only represented the plaintiff outside the state of Ohio, Defendant did not sell or intend to market any products in the forum state of Michigan. Defendant shipped the tobacco product for export directly from New York—sending only a shipment of twenty cigarette cartons to Plaintiff in Michigan for sampling purposes. (Dkt. # 6-2, Pg. ID 47 ¶¶ 13-17.) Lastly, like the defendant in *Calphalon*, who contacted the plaintiff in the forum state purely as a result of the plaintiff's choice to reside there, the fact that Defendant contacted Plaintiff in Michigan was only the incidental result of Plaintiff's choice to be a

8

Michigan citizen. Defendant could have contacted Plaintiff and exported the tobacco product to Iraq in accordance with the agreement regardless of where Plaintiff happened to reside.

Furthermore, the agreement's New York choice-of-law provision weighs heavily in Defendant's favor. The parties' agreement states that, "[t]he validity, construction and performance of this Agreement shall be governed and interpreted in accordance with the laws of the state of New York." (Dkt. # 7-3, Pg. ID 98.) Like the parties in *LAK*, Plaintiff and Defendant "elected to invoke the benefits" of New York law, further demonstrating that Defendant did not seek to take advantage of the benefits of the Michigan forum. "Having elected to invoke the benefits of [New York] law for deciding disputes under the contract, there is obviously much to be said in favor of letting such disputes be resolved in a [New York] court." *LAK*, 885 F.2d at 1295.

Lastly, the parties' agreement is similar to the agreement disputed in *LAK*. Here, the fact that the parties' agreement envisioned future purchase orders weighs in Plaintiff's favor. Pragmatically, however, the present agreement is akin to the agreement the court found insufficient in *LAK*, in that both agreements were short-lived and involved a single purchase. (Dkt. # 7-2, Pg. ID 92 ¶¶15-16.) Under the present agreement, "either party reserve[d] the right to terminate this agreement without cause by providing written notice to the other Party within sixty (60) days of the termination date." (Dkt. # 7-3, Pg. ID 96 ¶ 7.) Thus, Plaintiff could decline to offer and Defendant could decline to accept, future purchase orders. The fact that the parties envisioned future business transactions with one another is not sufficient for a finding of purposeful availment.

9

Plaintiff contends that the emails, phone calls and the sample cigarettes sent in order to meet manufacturing specifications for to the tobacco product order are sufficient for finding that the Defendant purposely availed itself in Michigan. (Dkt. # 7, Pg. ID 80.) Plaintiff principally relies on *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998) and *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 228 (6th Cir. 1972). In *Cole,* the Sixth Circuit determined that an Ohio court could exercise personal jurisdiction in a breach of contract case involving a California defendant and an Ohio plaintiff. The court reasoned that as a result of the defendant's failure to repay a loan agreed upon in the disputed contract and in light of the parties' ten-year business relationship, the defendant created a "continuing obligation in Ohio" sufficient for the court to exercise personal jurisdiction. *Cole,* 133 F.3d at 436.

Similarly, in *In-Flight Devices*, the Circuit concluded that an out-of-state defendant purposely availed itself of the forum state of Ohio by negotiating and creating a contract for the purchase of goods manufactured by an Ohio plaintiff because the "contract with the Plaintiff would have substantial consequences with the State of Ohio." 466 F.2d at 227.

This case differs substantially from the disputed agreements in both *Cole* and *In-Flight Devices*. Here, unlike in *Cole*, no long term, past or continuing obligations in Michigan exist for Defendant. And, the present agreement is of a different character than the agreement in *In-Flight Devices*. Neither Plaintiff nor Defendant manufacture any products in Michigan, and there are no analogous conditions present in this case where Defendant's actions would cause the "substantial consequences" that arose in *In-Flight Devices*. Although Plaintiff's monetary injury may have occurred in Michigan, "the

10

locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state." *Calphalon* 228 F.3d at 722 (6th Cir. 2000) (quoting *LAK, 885* F.2d at 1303).

Defendant did not enjoy the type of "continuous," or "far-reaching," contacts necessary to create a "substantial connection" with the state of Michigan. Accordingly, even when viewed collectively and in the light most favorable to Plaintiff, these contacts are insufficient to establish purposeful availment.

## 2. Arising From

Even assuming, arguendo, that Defendant did purposely avail itself of the benefits of the forum state, Plaintiff's cause of action does not "arise from" Defendant's contacts with the forum state. "To satisfy the 'arising from' [test,] the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 768 F.3d at 506-07. While "a breach of contract action arises from the defendant's contact with the state because the contract 'is necessarily the very soil from which the action for breach grew," *Calphalon*, 228 F.3d 718 at 724 (quoting In-Flight Devices, at 228), "the mere fact that the transaction involved a Michigan party is . . . not sufficient" to satisfy the arising from test. *Kerry Steel*, 106 F.3d at 152.

In the present case, Defendant's contacts do not sufficiently relate to the alleged cause of action. In *Kerry Steel*, the court concluded that the claim did not arise from the defendant's failure to pay for the full purchase price of the contract because the activity that caused the breach (failing to pay the purchase price) occurred in Oklahoma, and therefore, the claim did not "arise from" the defendant's contacts in the forum state of Michigan. 106 F.3d at 152.

11

Here, the cause of action arises out of Defendant's alleged failure to manufacture a tobacco product in accordance with the two parties' agreement. (Dkt. # 7, Pg. ID 81.) Like the agreement in *Kerry Steel*, all stages of production and sale causing the Defendant's alleged breach arose solely out of Defendant's actions that took place outside of the Michigan forum. In accordance with a contract governed by New York law, Defendant manufactured the product in New York, sent the product to be tested in Virginia, and shipped the product, exporting it from New York directly to Iraq. (Dkt. # 6-2, Pg. ID 46-47 ¶¶ 10-13.) Upon arrival the product was either pulled from Iraqi store shelves or deemed "unfit for human consumption" by Iraqi authorities. (Dkt. # 7-2, Pg. ID 2-3 ¶¶ 17-18.) Defendant's actions, therefore, failed to create a causal nexus between Defendant's contacts with the forum state and the Plaintiff's cause of action.

### 3. Reasonableness

The "reasonableness analysis is a function of three factors: '[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief." *Beydoun*, 768 F.3d at 508. Plaintiff asserts that all "three of the reasonableness sub-factors support a finding that the exercise of jurisdiction over Defendant is reasonable." (Dkt. # 7, Pg. ID 83) The court disagrees.

All three reasonableness sub-factors weigh in favor of Defendant. First, if the court were to hale the New York Defendant into a Michigan court, the court would be placing a substantive burden on Defendant, especially in light of the tenuous connection formed between Defendant's activities and the state of Michigan. Second, Plaintiff has failed to show that Michigan would have sufficient interest in the outcome of the litigation. Although Michigan has a general interest in litigation involving its citizens, because Defendant has such limited contacts with Michigan, the burden placed on

12

Defendant outweighs both Plaintiff's and the state's interest. *See Paglioni & Associates, Inc. v. WinnerComm, Inc.*, No. 206-CV-00276, 2007 WL 852055, at *8 (S.D. Ohio March 16, 2007) (finding that the burden placed on an out-of-state defendant to appear in a state without a substantial connection outweighed the plaintiff's interest in obtaining relief and the state's interest in protecting one of its citizens). Lastly, although Plaintiff clearly has an interest in choosing a forum to obtain relief, such an interest does not outweigh the burden placed on Defendant were this court to hale the Defendant into a Michigan court.  As a result, exercising personal jurisdiction over Defendant is not reasonable.

Plaintiff has failed to satisfy any of the three factors necessary to establish personal jurisdiction over Defendant. Failing to satisfy even one of these factors would independently destroy the court's jurisdictional authority over Defendant..

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss for Lack of Personal Jurisdiction" (Dkt. #  6.) is GRANTED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 11, 2016

13

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 11, 2016, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\16-10151.PUREVIRGINIA.pj.vg.RHC.wpd